WEIS, Circuit Judge,
concurring.
Relying on language in Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) and Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), the majority concludes that because the harassing supervisors took adverse employment action, defendant Durham may not present a defense based on the plaintiffs failure to utilize the employer’s grievance procedure.
The majority correctly observes that the Ellerth and Faragher opinions distinguish between situations in which tangible adverse employment action occurred and those in which it has not (ie., a sexually hostile environment but no tangible adverse action). See Ellerth, 118 S.Ct. at 2270; Faragher, 118 S.Ct. at 2292-93. This distinction, used in the context of defining the scope and imposition of vicarious liability, is understandable and readily applied. The case before us, however, has elements of both a hostile environment claim and a claim for discriminatory adverse employment action and may appropriately be termed a “mixed” one. In the,se circumstances, it is insufficient simply to point to the distinction; Ellerth and Faragher compel discussion of other considerations.
Faragher emphasized that Title VII’s primary objective “is not to provide redress, but to avoid harm.” 118 S.Ct. at 2292 (citing Albemarle Paper Co. v. Moody, 422 U.S. 405, 417, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975)). The Court observed that a defense structured to recognize the employer’s affirmative obligations would implement clear statutory policy by rewarding employers who make reasonable efforts to discharge their duty and help prevent sexual harassment. See id. (discussing Title VII, and the regulations and policies of the Equal Employment Opportunity Commission).
Similar language appears in Ellerth. There, the Court reiterated that Title VII encourages the creation of antiharassment policies and effective grievance procedures. See Ellerth, 118 S.Ct. at 2270. As the Court observed, “[wjere employer liability to depend in part on an employer’s effort, to create *162 such procedures, it would effect Congress’ intention to promote conciliation rather than litigation in the Title VII context.” Id. Moreover, “[t]o the extent limiting employer liability could encourage employees to report harassing conduct before it becomes severe or pervasive, it would also serve Title VII’s deterrent purpose.” Id.
Both opinions also expressly endorse, as consistent with Title VII, a framework that places some onus on the victims of sexual harassment to report it to their employers. Ellerth recognized that “Title VII borrows from tort law the avoidable consequences doctrine.” Id. (citing Ford Motor Co. v. EEOC, 458 U.S. 219, 232 n. 15, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982)). Faragher echoed this proposition: “[i]f the plaintiff unreasonably failed to avail herself of the employer’s preventive or remedial apparatus, she should not recover damages that could have been avoided if she had done so.” 118 S.Ct. at 2292.
Affording employers an affirmative defense serves two purposes. First, it supports the imposition of vicarious liability when a supervisor subjects a subordinate to a hostile environment. Second, it prevents litigation by encouraging the creation of effective grievance procedures and the settlement of cases, as well as discouraging would be plaintiffs who have failed to take advantage of preventive procedures.
Allowing the defense in hostile environment cases serves both purposes, but denying it in mixed cases defeats the second, arguably where the defense is most needed. Both types of harm could be avoided if employers created effective procedures and employees utilized them. In a case where tangible adverse actions could have been avoided had the plaintiff-victim reported the escalating pattern of harassment, preclusion of the defense lacks a logical foundation.
In this case, the plaintiff experienced harassment over a period of many months before any adverse employment action occurred. Without belaboring the details, it appears that the various harassing incidents occurred in March, April, May, June and July 1993. The tangible adverse employment actions discussed by the majority, however, occurred later: plaintiffs secretary was not discharged until July 1993 and the plaintiff did not lose her office or her files until September 1993.
Defendant Durham argues that had the plaintiff reported the harassing conduct that took place before July 1993, it would have had an opportunity to correct the situation and thereby forestall the later adverse actions taken by the plaintiffs superiors. Given Ellerth and Faragher’s exposition of the rationale underlying the defense, that argument has some force. Unlike the majority, I do not discount that argument but believe that the employer has failed to establish a right to the defense on an entirely different ground.
I would affirm the judgment in this case because Durham did not show that its grievance procedure was adequate to satisfy the standards set out in Ellerth and Faragher. The District Court found that “Evans was never given any literature or provided any information about the procedure to report sexual harassment and had no idea where such information could be obtained.” An effective employer policy, however, is one that has been disseminated to all employees and that provides an assurance that the harassing supervisor can be bypassed in registering a complaint. See Faragher, 118 S.Ct. at 2293. Durham’s policy met neither of these requirements. Therefore, having failed to establish the most basic requirement for invocation of the affirmative defense, i.e., an effective grievance procedure, Durham was not entitled to its protection.
Because I join in all other portions of the majority opinion, I would affirm.